**CORINTH JOINT VENTURE, Mayo P. Crum, Jr., and M.P. Crum Company, Appellants,**

**v.**

**LOMAS & NETTLETON FINANCIAL CORPORATION and K. Krause, Substitute Trustee, Appellees.**

No. 05–83–00895–CV.

Court of Appeals of Texas, Dallas.

Jan. 30, 1984.

Rehearing Denied Feb. 29, 1984.

Robert H. Renneker, Law Offices of Christopher M. Weil, Dallas, for appellants.

Larry M. Lesh, Kent C. Krause, Locke, Purnell, Boren, Laney & Neely, Dallas, for appellees.

Before AKIN, VANCE and ALLEN, JJ.

AKIN, Justice.

This appeal is from the denial of a temporary injunction which was sought to prevent Lomas and Nettleton's extra-judicial foreclosure on a tract of land owned by the Corinth Joint Venture. Two questions are presented by this appeal. First, is Lomas and Nettleton's right to foreclosure barred by the statute of limitations? Second, was Lomas and Nettleton estopped by its course of dealing from foreclosing on the property? We conclude that the statute of limitations has not run because the maturity date of the indebtedness upon which default occurred was extended by an agreement between Lomas and Nettleton and a partner of the joint venture. We hold also that Lomas and Nettleton's dealings with the partners of the joint venture were not a waiver of its right to an extra-judicial foreclosure against Corinth. Thus, the trial court did not abuse its discretion by denying the temporary injunction sought by Corinth. Consequently, we dissolve our temporary injunction which we had previously issued to protect our jurisdiction of this appeal.

The controversy concerns a promissory note with a principal of $878,085.00, payable to Lomas and Nettleton and executed on August 29th, 1975, by the Corinth Joint Venture, a partnership composed of M.P. Crum Company and the New Town Development Corporation. This promissory note was secured by a deed of trust, executed on the same date as the note, on the property upon which Lomas and Nettleton is seeking to foreclose. Guaranties were also executed by M.P. Crum Co., Mayo P. Crum, Jr., who was president of Crum Co., New Town Development Corp. and Harry James who was "involved" with New Town, guaranteeing payment of the note. On August 2nd, 1978, Lomas and Nettleton filed suit

against Crum Co., M.P. Crum, Jr., New Town Development Corp. and Harry James, on their guaranties. A settlement agreement with respect to the suit was executed on March 31st 1980, between Lomas and Nettleton and Crum Co. and M.P. Crum, Jr. in which a schedule of payments was established to pay the original promissory note of Corinth, as well as the accrued interest. This settlement agreement was supplemented before judgment. Pursuant to the settlement agreement and the supplement, an agreed judgment was rendered against Crum and The Crum Company on June 6, 1980, after the action against the other parties was severed. Because payments on the note were not made in adherence to the settlement agreement, on July 11, 1983, Lomas and Nettleton demanded immediate payment from Crum and The Crum Company and informed Crum that, unless payment of the note was made forthwith, the property owned by the Corinth Joint Venture would be posted for foreclosure under the August 29th, 1975, deed of trust. The present suit was then filed by Crum, Crum Company and the Corinth Joint Venture seeking a temporary injunction and, after a trial on the merits, a permanent injunction to prevent Lomas and Nettleton "from attempting to foreclose the deed of trust lien or any other lien on the property by reasons of any circumstance or condition existing at the present time."

Corinth contends initially that Lomas and Nettleton's right to foreclose on the Corinth property is barred by the statute of limitations because Corinth's promissory note has been in default for more than four years. In response, Lomas and Nettleton asserts that the maturity date of the promissory note was extended by the settlement agreement of 1980 between Crum, Crum Company, and Lomas and Nettleton. Consequently, it argues that the note as extended by the agreement has been in default for less than four years. On the other hand, Corinth argues that the settlement agreement was not intended to extend the maturity of the promissory note because the settlement agreement dealt solely with Crum and Crum Company's individual obligations under their guaranties. Thus, Corinth asserts that the agreement did not affect Corinth's obligation as a separate entity under the promissory note. We hold, however, that the settlement agreement covered both the guarantors' individual obligations and Corinth's obligation under the promissory note. Thus, foreclosure against Corinth's property was not barred by limitations.

■■■ Joint ventures are considered to be almost identical in character to partnerships; thus, the law of partnership is applicable to them. *Grey v. West,* 608 S.W.2d 771, 776 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.). Texas partnership law "recognizes [a partnership] as an entity legally distinct from its partners for most purposes." *Haney v. Fenley, Bate, Deaton and Porter,* 618 S.W.2d 541, 542 (Tex. 1981). If a party wishes to join a partnership in a suit or to enter into an agreement with a partnership, the partnership entity itself and not the individual partners should be the party sued or made subject to the agreement. *See Dillard v. Smith,* 146 Tex. 227, 205 S.W.2d 366 (Tex.1947); 19 R. Hamilton, Business Organizations § 156 (Texas Practice 1973). However, "a contract [made within the scope of a partner's authority] made for the firm's benefit is binding on the partnership *even though executed in the name of one partner only*" [Emphasis added]. *Boyd v. Leasing Associates, Inc.,* 516 S.W.2d 485, 489 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.); 68 C.J.S. *Partnerships* § 147 (1950). The scope of a partner's authority is generally defined in section 9(1) of the Texas Partnership Act. TEX. REV.CIV.STAT.ANN. art. 6132b (Vernon 1970), section 9(1) states: "Every partner is an agent of the partnership for the purposes of its business, and the act of every partner, including execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership ..." Thus, an inquiry into whether the settlement

agreement barred the foreclosure is two pronged: First, was the agreement entered into with the intent to bind the joint venture? Second, was this agreement within the authority of the partner to make? We conclude that both questions must be answered in the affirmative.

With respect to the parties' intent, we look to the petition of Lomas and Nettleton in its 1978 suit, as well as the terms of the settlement agreement. Although Lomas and Nettleton's First Amended Original petition in the 1978 suit does not name the Corinth Joint Venture as party defendant, the petition states: "On August 29, 1975, Crum or New Town, as mentioned in a joint venture known as Corinth Joint Venture made executed and delivered a promissory note." A copy of the note was attached to the petition. Further, the petition states: "By reason of the foregoing, Crum and New Towns, *as joint venturers* in the joint venture known as Corinth Joint Venture are liable to Lomas and Nettleton, jointly and severally, for the sum of $1,057,455.00" [Emphasis added]. The parties' obligation as guarantors was mentioned elsewhere in the petition. Obviously, if Lomas and Nettleton had intended to sue the joint venture and hold its partners liable as parties on the note, it should have named the joint venture entity as a party to the suit. *Texaco Inc. v. Wolfe*, 601 S.W.2d 737 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). We need not pass on the question of whether the allegation made is sufficient to join the joint venture as a party defendant. However, we do consider the allegation probative of the fact that Lomas and Nettleton intended this suit to cover Corinth's obligation under the promissory note as well as the guarantors' obligation on their guaranty. Crum and The Crum Company's intent, as well as Lomas and Nettleton's intent to cover the Corinth note and property, is shown by the settlement agreement terminating the prior litigation. Certainly, if that suit were brought on the joint venture's obligation, it is likely that the settlement agreement as a contract was intended by all parties to bind the joint venture, as well as Crum and The Crum Company.

We turn next to the terms of the settlement agreement. Admittedly, the settlement agreement does not mention Corinth as a party to the agreement, and past agreements between Corinth and Lomas and Nettleton had been signed "Corinth Joint Venture by it joint venturer" with Crum Company and New Town signatures following. However, the agreement does state that Lomas and Nettleton instituted the prior suit upon which this agreement was based "for recovery on the Corinth note *and* on the guarantees...." Since this agreement was in settlement of that suit, it indicates that Lomas and Nettleton was dealing with Crum and The Crum Company both individually and as partners of the Corinth Joint Venture. Additionally, the settlement agreement specifies that Lomas and Nettleton will take judgment against Crum Company and Crum for the full amount due on the note, which is over a million dollars, but that they will be personally liable on the note only up to six hundred thousand dollars. This shows that Lomas and Nettleton was dealing with the Crum Company and Crum both in their individual capacities as well as partners of Corinth because it would be futile to take a judgment against a party and then specify that the partners were personally liable only for a portion of that judgment. Furthermore, the settlement agreement noted that, for so long as Crum and Crum Company were current on payments under the settlement agreement, Lomas and Nettleton would not seek to foreclose on the property owned by Corinth which secured the promissory note. This attempt to protect the property of the joint venture shows that Crum Company was acting in executing this agreement as a general partner for the Corinth Joint Venture as well as for itself on its individual guaranty. There are phrases in the settlement agreement which could lead to the contrary conclusion, consequently, the results after a trial on the merits may be different from the result which we have reached. Nevertheless, based upon the language in the agreement,

we cannot say that the trial court abused its discretion in concluding that the settlement agreement covered both the indebtedness of the Corinth Joint Venture on the promissory note as well as the indebtedness of the Crum Company on its guarantee.

 We now turn to the question of whether the act of entering into an agreement extending the maturity of the indebtedness was within the authority of Crum Company as a partner. We conclude that the extension of maturity could be characterized as carrying on the business of the partnership in the usual way. The business of the joint venture was to own and to develop the property in question. An agreement which preserved the prime asset of the joint venture would certainly appear to be within the agent's authority. Further, a partner has the authority to borrow money and to give promissory notes if related to the usual business of the partnership. Crane and Bromberg, Law of Partnerships, § 850, at 281 (1968). Moreover, a partner has the authority to waive the statute of limitations by acknowledgment or part payment of a barred debt. Id. at 285. These powers appears to be no broader in scope than the power to agree to extend the date of maturity of a note.

 Corinth insists that it was not within the power of Crum to extend the maturity of the note. In Corinth's view, by entering into a settlement agreement binding the joint venture, Crum has confessed a judgment against the joint venture. Corinth relies on Section Nine of Partnership Act which states that all parties must join any confession of judgment against the partnership. TEX.REV.CIV.STAT.ANN. art. 6132b § 9(3)(d) (Vernon 1970). Corinth's statement of the law is correct but has no application in this case. Our view is that the settlement agreement was a contract between Crum as a partner and Lomas and Nettleton to extend the maturity date of the note. It is this contract which bound Corinth, not the judgment. As we have previously noted, we doubt whether Lomas and Nettleton's pleadings were adequate to make Corinth a party to the suit, but whether Corinth was a party to that suit is not relevant. The fact that a judgment was taken implementing certain features of this contract is irrelevant and does not mean that Corinth was bound by or a party to the judgment.

We conclude that the settlement agreement covered both the indebtedness of Crum under the guarantees as well as that of Corinth under its promissory note and that an agreement to extend the maturity of a note was within the authority of Crum to make. Under the new agreement, Lomas and Nettleton's cause of action did not accrue until Crum and the Crum Company defaulted under the terms of the settlement agreement in November of 1981. Thus, Lomas and Nettleton's foreclosure is well within the limitations period.

 Finally, Corinth contends that Lomas and Nettleton should be estopped from pursuing an extra-judicial foreclosure. The basis of this contention is that the default under which Lomas and Nettleton attempted foreclosure occurred two years ago. During this period Lomas and Nettleton has permitted Corinth to hold the property and to pursue zoning changes which will facilitate the property's development. This zoning change has now been obtained. However, we do not view a creditor's reluctance to foreclose on a debtor's property in the hope that the debtor will be able to cure his default as raising a species of estoppel. A creditor should not be penalized for its forbearance with respect to a debtor's property.

Affirmed.