

# THE ATTORNEY GENERAL
## OF TEXAS

August 14, 1987

**JIM MATTOX**
**ATTORNEY GENERAL**

Dr. Lauro F. Cavazos
President
Texas Tech University
P. O. Box 4349
Lubbock, Texas    79409

Opinion No. JM-769

Re: Validity of proposed joint venture agreement between Texas Tech University and a private or municipal utility to construct and operate a cogeneration facility

Dear Dr. Cavazos:

Your letter requesting an opinion of this office advises:

> Texas Tech is considering the construction of a cogeneration facility on its campus in Lubbock. The project has the potential for significant savings in utility costs. While Texas Tech could construct the facility through the sale of bonds, there would be additional financial advantage if the project could be done through a joint venture with one of the two local utility companies. This arrangement would provide most of the thermal requirements of the campus and for the electrical needs of Texas Tech and the Health Sciences Center, and provide electricity for sale by the joint venture to the utility company.

In that connection you ask several questions, one of which is phrased:

> Can Texas Tech enter into a joint venture arrangement with a municipal or privately-owned utility company? It is proposed that Texas Tech would own 51 percent interest in the project with the utility company owning the remaining 49 percent.

Texas Tech University is an official arm of the state, not a political subdivision. See Bolen v. Board of Firemen, Policemen, and Fire Alarm Operators, 308 S.W.2d 904 (Tex. Civ. App. - San Antonio 1957, writ ref'd); Attorney General Opinion H-365 (1974). Cf. Jagnandan v. Mississippi State University, 373 So. 2d 252 (Miss. 1979), cert. denied, 444 U.S. 1026, reh. denied, 448 U.S. 914 (1980). The governing bodies of state universities are creatures of statute and may constitutionally exercise only powers properly delegated to

them by the legislature.  See Foley v. Benedict, 55 S.W.2d 805 (Tex. 1932); Attorney General Opinion MW-475 (1982).

A "joint venture" is in the nature of a partnership -- an association of two or more persons to carry on a business limited to one particular enterprise.  State v. Houston Lighting and Power Co., 609 S.W.2d 263 (Tex. Civ. App. - Corpus Christi 1980, writ ref'd n.r.e.).  It is a contractual arrangement whereby there is a community of interest in the venture, an agreement to share profits, an agreement to share losses, and a mutual right of control or management of the enterprise.  Ayco Development Corp. v. G.E.T. Service Co., 616 S.W.2d 184 (Tex. 1981).

The law of partnerships is applicable to joint ventures. Shindler v. Harris, 673 S.W.2d 600 (Tex. App. - Houston [1st Dist.] 1984, no writ); Corinth Joint Venture v. Lomas & Nettleton Financial Corp., 667 S.W.2d 593 (Tex. App. - Dallas 1984, writ dism'd).  See Thomas v. American National Bank, 704 S.W.2d 321 (Tex. 1986).  In Texas, partnerships are recognized as legal entities for most purposes, and a contract made within the scope of a partner's authority for the benefit of the partnership is binding on it even though executed in the name of one partner only.  Corinth Joint Venture, 667 S.W.2d at 595.

Cogenerating facilities were discussed in Attorney General Opinion Nos. JM-709 (1987); JM-353 (1985).  They are facilities which produce both electric energy and steam, heat or energy in some other useful form that the "cogenerator" uses for its own industrial purposes.  16 U.S.C. §796(18)(A); Federal Energy Regulatory Commission v. Mississippi, 456 U.S. 742, 750 n. 11 (1982).  If it produces energy in excess of its needs, and is a qualifying facility, it enjoys certain regulatory advantages.  A qualifying cogenerator is one which owns a qualifying cogeneration facility -- i.e., one which meets the rules of the Federal Energy Regulation Commission and is owned by an individual or corporation [including partnerships or associations, but not municipalities, political subdivisions or agencies of the state, see 16 U.S.C. §796(3), (4), (7)] not otherwise primarily engaged in the generation and sale of electric power.  16 U.S.C. §796(18)(B), (C); V.T.C.S. art. 1446c, §3(c).

We need not decide whether the contemplated cogenerating facility would be a "qualifying" one under the above-cited state and federal

---

1.  Three amended versions of section 3(c) of article 1446c were enacted by the 68th Legislature.  All define "qualifying cogenerator" by reference to provisions of the Federal Power Act codified as 16 U.S.C., section 796(18)(C).  See Acts 1983, 68th Leg., ch. 99, §9, at 497; ch. 263,§21, at 1217; ch. 274, §1, at 1260.

statutes exempting its owner from the Texas Public Utility Regulatory Act and bringing it within the field of legislation preempted by federal law. Cf. Attorney General Opinion MW-45 (1979). We need not do so because we have concluded that participation by the university in the proposed joint venture would be unlawful in any event.

Constitutional provisions prohibiting political corporations or subdivisions of the state from becoming a "stockholder" in a corporation, association, or company, see Tex. Const. art. III, §52, or from becoming a "subscriber to the capital" thereof, see Tex. Const. art. XI, §3, are not directly applicable to the university. See Attorney General Opinion H-365 (1974). But other constitutional provisions would be offended by the proposed arrangement.

Because we have concluded that section 50 of article III of the Constitution of Texas precludes participation of the university in such a joint venture with either a private entity or a municipal utility, we will not discuss at length the application of article XVI, section 6, of the constitution, which provides that no appropriation for private or individual purposes shall be made unless authorized by the constitution; the application of article VIII, section 3, which allows the collection of taxes only for "public purposes"; or the application of article II, section 1, which states that the powers of state government shall be divided into three departments, each of which shall be confided to a separate body of "magistracy." See also Tex. Const. art. III, §51.

It is not unconstitutional to expend public money for the direct accomplishment of a proper public purpose even though a privately owned business may be incidentally benefitted thereby. Barrington v. Cokinos, 338 S.W.2d 133 (Tex. 1960); State v. City of Austin, 331 S.W.2d 737 (Tex. 1960). Private entities can be used to accomplish public purposes so long as sufficient controls exist to assure that proper public ends are achieved; but private entities cannot validly be given discretionary authority to control public business, nor can the unconditional use of public credit be granted to them. See Attorney General Opinion Nos. JM-509 (1986); JM-274 (1984); JM-57 (1983); O-690 (1939). Where governmental powers have been properly delegated to an official board, the powers so delegated cannot be validly re-delegated by the board to a private entity. City of Galveston v. Hill, 519 S.W.2d 103 (Tex. 1975).

Article III, section 50, of the Texas Constitution provides:

> The Legislature shall have no power to give or to lend, or to authorize the giving or lending, of the credit of the State in aid of, or to any person, association or corporation, whether municipal or other, or to pledge the credit of the State in any manner whatsoever, for the payment of the liabilities, present or prospective, of any

individual, association of individuals, municipal
or other corporation whatsoever.

This provision prevents the legislature from authorizing the university to lend its credit in aid of or to "any person, association or corporation, whether municipal or other, or to pledge the credit of the State in any manner . . . for the payment of the liabilities, present or prospective, of any . . . municipal or other corporation whatsoever." Inasmuch as the legislature is powerless to give it, the university does not possess the authority to make such an agreement.

In a joint venture such as the one suggested with a utility, the utility -- along with the university -- would have the discretionary power to set and control the policy of the joint venture owning the cogeneration facility, and to unilaterally incur liabilities on its behalf for which the credit of the university (i.e., the state) would stand bound to answer. See Corinth Joint Venture v. Lomas & Nettleton Financial Corp., supra.

The sharing of mutual losses is an essential element of a joint venture. Ayco Development Corp. v. G.E.T. Service Co., supra. It was because no agreement to share mutual losses or gains was evidenced in State v. Houston Lighting & Power Co., supra, that the court held a joint venture non-existent there. Cf. Russell v. French & Associates, Inc., 709 S.W.2d 312 (Tex. App. - Texarkana 1986, writ ref'd n.r.e.); State ex rel. Grimes County Taxpayers Association v. Texas Municipal Power Agency, 565 S.W.2d 258 (Tex. Civ. App. - Houston [1st Dist.] 1978, writ dism'd).

We advise that Texas Tech University may not, without violating article III, section 50, of the Texas Constitution, enter into a joint venture with a municipal or private utility company. Inasmuch as your other questions were grounded in the expectation that the joint venture arrangement could be entertained, we do not reach them.

### S U M M A R Y

Texas Tech University may not, without violating article III, section 50, of the Texas Constitution, enter into a joint venture agreement with a utility.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Bruce Youngblood
Assistant Attorney General