**PADRE ISLAND INVESTMENT CORPORATION, Appellant,**

v.

**Harold MILLER, Appellee.**

**No. 13–83–464–CV.**

Court of Appeals of Texas,
Corpus Christi.

March 22, 1984.

Rehearing Denied April 3, 1984.

Shirley Selz, Gary, Thomasson, Hall & Marks, Corpus Christi, for appellant.

Richard W. Crews, Jr., Brin & Brin, Corpus Christi, for appellee.

Before BISSETT, YOUNG and UTTER, JJ.

OPINION

BISSETT, Justice.

Harold Miller, appellee in this Court, brought this suit wherein he sought to recover for marketing services allegedly performed pursuant to a contract between Padre Island Investment Corporation, appellant herein, and him. The case was tried to the court without a jury, and, based on stipulated facts, the trial court rendered judgment that appellee recover $54,000.00 from appellant. Appeal from that judgment has been duly perfected by appellant.

The record contains a series of letters between the parties. The first letter was from appellee and was dated June 1, 1971; it set forth general guidelines concerning his "[r]etention as [appellant's] marketing consultant in the areas of advertising, direct mail, sales promotion and sales." The fee for these services was set at $2,500.00 each month. The agreement was eventually extended to March 31, 1978, and the monthly fee was eventually increased to $4,500.00. At some time in 1977, further sales by appellant were apparently suspended by the Department of Housing and Urban Development (HUD). The following

letter, dated October 25, 1977, was then sent from appellant to appellee:

"It was agreed by you [appellee] to relieve us [appellant] from payment of your retainer fee of $4,500 per month for the balance of your contract starting November 1977 and ending through March 1978. In consideration of this relief, we have agreed to rehire your services *under the same conditions as outlined in the original Letter of Agreement* dated June 1, 1971, and extended and amended up through an agreement dated March 16, 1977, as soon as the HUD suspension on sales is lifted. Upon the lifting of the suspension, the agreement between us will automatically be in effect from that date to one year later.

\*　　\*　　\*　　\*　　\*　　\*

In addition, we agree to pay the balance owed you of $22,500 between now and December 31, 1977." [Emphasis added.]

The 1971 Letter of Agreement stated: "In consideration of my services, you will pay me a fee [the $4,500.00 per month].... In addition, all expenses including travel and entertaining relative to your business will be paid to me upon receipt of proof of expense.

It is understood that I will devote approximately ten (10) days per month to your valued account. Travel and time spent at your home offices, field offices, broker offices and at my office creating and preparing your work is defined as devoting time to your account."

The parties stipulated that the terms of the October 25, 1977 letter relieved appellant of "retainer" payments from November, 1977 through March, 1978; that the HUD suspension on sales was lifted as of May 30, 1979; that appellant paid the $22,-500 referred to in the Letter Agreement (the actual payment was $23,129.01); that appellant made no payments to appellee after the HUD suspension was lifted on May 30, 1979; that appellee performed no services for appellant after May 30, 1979; and that appellant never requested appellee to perform any service for it after May 30, 1979.

■ Appellant first argues that appellee was not entitled to recover under the Letter Agreement because he performed no services for appellant. We agree. The plain language of the Letter Agreements when read together, shows that appellant agreed to rehire appellee's *services* on the condition that he expend the promised effort on appellant's "valued account."

Appellee argues that "several rules of construction must be considered" in determining whether he was required to perform services before he was entitled to his fee. However, "if there is no ambiguity, the construction of the written instrument is a question of law for the Court.... [which] will give effect to the intention of the parties as expressed or as is apparent in the writing. In the usual case, the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls." *City of Pinehurst v. Spooner Addition Water Company*, 432 S.W.2d 515 (Tex. 1968). "[L]anguage used by the parties should be given its plain grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated." *Fox v. Thoreson*, 398 S.W.2d 88 (Tex.1966). Thus, the rule of "strong construction against the author" will not be invoked in the instant case, where the contract is unambiguous. *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154 (Tex.1951). We are, however, aware of the rule that "[a] contract will not be construed so as to render some of its terms meaningless." *Blaylock v. American Guarantee Bank Liability Insurance Company*, 632 S.W.2d 719 (Tex.1982). We hold that the contract was not ambiguous.

We do not believe that appellant sought to escape $22,500.00 of contract liability (from the five remaining months on the final letter agreement extension) by burdening itself with $54,000.00 of unconditional near-future liability. The bargain was clearly for appellee to forego his right to *earn* the remaining five months of "retainer" fees in return for a future right to

*earn* twelve months of "retainer" fees when the HUD suspension was lifted. We do not accept appellee's categorical insistence that his forebearance of the right to the $22,500.00 constituted sufficient consideration for his unconditional right to receive the $54,000.00.

We hold that the "rehiring" of appellee was not automatic; rather, than Letter Agreement was contingent on appellee's performance of prescribed conditions which had to be satisfied before appellant would be obligated to pay the "retainer" fee. Appellee had an affirmative obligation to earn his money. *George v. Houston Boxing Club, Inc.,* 423 S.W.2d 128 (Tex.Civ.App.—Houston [14th Dist.] 1967, writ ref'd n.r.e.). He did not fulfill that obligation.

■ There are other reasons why the judgment of the trial court should be reversed and judgment rendered that appellee take nothing in his suit. There are no pleadings by appellee that during the time in question he was able, willing and ready to perform any marketing services for appellant. Moreover, while it was stipulated that appellee did not perform any services for appellant after May 30, 1979, and that appellant did not request appellee to perform any such services for it during the involved period of time, there is neither stipulation nor evidence that appellee was able, willing and ready to perform such services. It has long been the rule in Texas that a judgment is sustainable only where it is supported by both pleadings and evidence. *Stone v. Boone,* 160 S.W.2d 578, 581 (Tex.Civ.App.—Fort Worth 1942, writ ref'd w.o.m.); *Hartford Accident & Indemnity Co. v. Moore,* 102 S.W.2d 441, 443 (Tex.Civ.App.—Dallas 1937, writ ref'd); *Farm & Home Savings & Loan Ass'n of Missouri v. Muhl,* 37 S.W.2d 316, 319 (Tex.Civ.App.—Waco 1931, writ ref'd).

Appellant's points of error in which it contends that it is not liable to pay appellee's unearned fee are sustained. We, therefore, are not required to consider appellant's points of error wherein it asserts that the trial court used the wrong measure of damages in determining appellee's entitlement.

The decision of the trial court is reversed, and judgment is here rendered that appellee take nothing by his suit.

REVERSED AND RENDERED.