Susanna **FRIEDMAN**, Appellant,

v.

**NEW WESTBURY VILLAGE ASSOCIATES**, Appellee.

No. 01–89–00617–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 15, 1990.

Wayne H. Paris, Houston, for appellant.

Joseph H. Kornfeld, Hiller, Kornfeld, Axelrad, & Falik, Houston, for appellee.

Before DUNN, O'CONNOR and SAM BASS, JJ.

## OPINION

SAM BASS, Justice.

After a bench trial, judgment was rendered against Susanna Friedman, and for New Westbury Village Associates ("NWV").

We affirm.

NWV is a joint venture that owns, operates, and maintains an apartment project known as the New Westbury Village Apartments. Ben Friedman, the non-appealing defendant, owned a 12.5 percent interest in NWV before his divorce from appellant, Susanna Friedman.

The pertinent provisions of the NWV joint venture agreement are as follows:

In the event the Joint Venture shall require additional capital to complete the construction of the project, or in the event the Joint Venture shall not have sufficient funds on hand to operate this project, each of the Joint Venturers hereto expressly agrees to contribute as additional capital his respective pro rata share of such deficit when called upon to do so ... [including] the principal and interest becoming due upon any note or notes which the Joint Venture may execute in connection with the ownership of said property and the improvements erected thereon....

In the event any of the Joint Venturers fails to pay his proportionate share of such additional contributions to capital within ten (10) days after written notice of such request from the Managers of this project, any or all of the other Joint Venturers may advance such sums for his account and as security for the repayment of such sums so advanced shall have an express lien against the interest of the defaulting Joint Venturer, and said defaulting Joint Venturer shall repay 125% of the sum so advanced for his account plus interest at the rate of 7% per annum to date of repayment.... If such repayment is not made by the defaulting Joint Venturer within six (6) months after such default, his interest shall forthwith be forfeited to the paying

Joint Venturers proportionately and the defaulting Joint Venturer and the Trustee shall be obligated to execute and deliver proper assignment and conveyance formally transferring all his rights, title and interest in the Joint Venture to such purchaser, but this Joint Venture shall not be interrupted or terminated by reason of such transfer.

### IV.

All matters of policy must be determined and agreed to by vote of at least seventy (70%) per cent in ownership interest by the Joint Venturers....

### V.

In order to obtain interim financing, it is agreed that each individual comprising the Joint Venture will personally execute or endorse the notes evidencing such loans if such be required by the lender.... Should the permanent mortgage lender require the individual signatures of each Joint Venturer in addition to that of the Trustee, the Joint Venturers agree to affix their signatures, although without personal liability....

### VI.

They [Leon Samet and Ben Friedman, co-managers] shall not, however, without a vote of at least 70% in ownership interest by the Joint Venturers, sell or convey any property nor make any major improvements therein or thereon, nor mortgage same, nor borrow nor lend money, nor make delivery of or accept any commercial paper, nor purchase or contract to purchase any property, nor do anything other than in the ordinary course of management and supervision....

The agreement contained a provision requiring the approval of the other joint venturers if a joint venturer desired to transfer or assign his interest in the joint venture. The provision was amended so that a joint venturer could transfer an interest to a member of the transferor's immediate family, who would be entitled to full voting privileges held by the transferor.

Ben and Susanna Friedman entered into a divorce agreement that awarded an undivided seven percent interest in NWV to Mrs. Friedman and an undivided 5.5 percent interest in NWV to Mr. Friedman.

The divorce agreement provided that the parties would assume the debts on their pro rata portions of NWV owned by each of them:

*3.05. Assumption of Encumbrances*

Except as otherwise provided in this Agreement or in the Schedules attached hereto, each party (as transferee) hereby assumes and promises to pay the debts, encumbrances and liens, in proportion to their percentage of each respective property transferred to such transferee....

[A]ny and all personal guarantees which may have been at any time heretofore made by BEN FRIEDMAN, shall not, and are not, by this agreement, being assumed by SUSANNA RUTH STERN FRIEDMAN, but shall remain the responsibility of BEN FRIEDMAN, *except* as to *Wife's pro rata share* by reason of her interest *in the properties listed on Schedule I, Item 15, and as contained in the respective Partnership or Joint Venture Agreements.*

A seven percent interest in NWV is one of the items listed in Schedule I, Item 15.

Ben Friedman sent a letter to the joint venture notifying them that he had conveyed a seven percent interest out of his 12.5 percent interest to Mrs. Friedman.

In April 1985, Mrs. Friedman signed a document as a joint venturer of NWV with a seven percent interest, along with six or seven other joint venturers, which authorized Leon Samet, manager of the joint venture, to execute a $50,000 promissory note on behalf of the joint venture. The agreement contained an indemnification provision:

Each of the Joint Venturers shall indemnify and hold harmless the makers of the note and all of the other Joint Venturers from and against liability in excess of his pro-rata interest. In the event any Joint Venturer fails to pay his proportionate share of the obligations created or reaffirmed herein, the provisions of Para-

graph III of the Joint Venture Agreement with regard to failure to pay capital contributions shall apply except that the effective rate of interest on unpaid amounts shall be the maximum allowed by law and not seven percent (7%) per annum.

The $50,000 note executed pursuant to the indemnification agreement was executed in favor of Bank of Houston.

A tax return was filed by the partnership on behalf of Mrs. Friedman, indicating that she had no interest in NWV at the beginning of 1984, and that she had a 6.25 percent interest in the joint venture at the end of the year. The 1985, 1986, and 1987 returns indicate that Mrs. Friedman had a seven percent interest in the joint venture. The joint venture sent copies of these returns to Mrs. Friedman. Mrs. Friedman never complained about the filing of these returns.

On July 16, 1986, a $300,000 note was executed in favor of the Bank of Houston, payable on or before October 15, 1986. The maker was listed as Ben Friedman. The note was signed Ben Friedman, trustee. The collateral for the agreement was the "continuing guarantee of the partners." Leon Samet, a joint venturer and managing partner, stated that Ben Friedman signed the note in a representative capacity for the joint venture to borrow money for renovations on the project.

The joint venture never generated enough money to pay the $300,000 note. On September 2, 1986, the apartments were foreclosed. A cash call was made to pay the amounts due on the $300,000 note. Mrs. Friedman owed money for previous cash calls which had been made, as well as the cash call on the $300,000 note. Every person within the joint venture paid the cash call except Ben and Susanna Friedman.

On July 24, 1987, counsel for the "performing venturers" notified Mr. and Mrs. Friedman that the Bank of Houston had made demand on NWV on February 9, 1987, that the $87,500 remaining on the note, plus interest, be paid. In response to the bank's demand, and in reliance upon the joint venture agreement as well as the indemnification agreement, Zinn, Hiller, and Samet paid the amounts remaining on the $300,000 note in cash and by executing a $39,945.21 note. Based on these events, counsel made demand upon Mr. and Mrs. Friedman to pay the joint venture the sum due.

Samet testified that the Friedmans owed the sums made the basis of this suit to the joint venture, rather than to himself, Zinn, and Hiller in their individual capacities. Samet, Zinn, and Hiller brought this suit as members of the joint venture, but not in their individual capacities. Samet also testified that Mrs. Friedman attended the meetings of the joint venture, paid when previous cash calls had been made, and knew about the $300,000 note.

The final judgment, signed April 26, 1989, found Susanna Friedman and Ben Friedman jointly and severally liable for: $21,000 as a seven percent pro rata portion of the bank loan; $1,426.37 as interest on that pro rata portion of the bank loan; $3,365.91 as interest on the bank loan from April 23, 1987, through March 31, 1989; $5,306.06 as unpaid cash calls; $768.43 as interest on the cash calls from November 1, 1986, through March 31, 1989; $9,250 as attorney's fees, with a remittitur of $5,000 to the non-appealing defendant; costs; and 10 percent post-judgment interest. Unsigned proposed findings of fact and conclusions of law appear in the record.

■ "In a nonjury trial, where no findings of fact or conclusions of law are filed or requested, it is implied that the trial court made all the necessary findings to support its judgment." *Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex.1989). It is appellant's burden to show that the trial court's judgment cannot be supported by any legal theory raised by the evidence. *Point Lookout West, Inc. v. Whorton,* 742 S.W.2d 277, 279 (Tex.1987); *Wetzel v. Sullivan, King & Sabom, P.C.,* 745 S.W.2d 78, 81 (Tex.App.—Houston [1st Dist.] 1988, no writ). All questions of fact will be presumed and found in support of the judgment. *Zac Smith & Co. v. Otis Elevator Co.,* 734 S.W.2d 662, 666 (Tex.1987), *cert.*

*denied*, 484 U.S. 1063, 108 S.Ct. 1022, 98 L.Ed.2d 986 (1988). We should affirm the judgment of the trial court if it is supported by both the pleadings and the evidence. *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 812 (Tex.1983); *Padre Island Investment Corp. v. Miller*, 669 S.W.2d 167, 169 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.).

In one point of error, Mrs. Friedman asserts that the trial court erred in finding that she was liable for a pro rata portion of the bank loan obtained by three members of the joint venture in their individual capacities, as well as interest, attorney's fees and court costs. She advances three theories: (1) the agreement incident to divorce was ambiguous as to whether she was liable for debts arising from ownership of property that she was awarded in the divorce settlement, and she did not sign the joint venture agreement; (2) the three individuals, who executed the $39,945.21 note to pay the amounts remaining on the $300,000 note, improperly attempted to execute a note on behalf of the partnership, as they did not constitute the 70 percent of the members of the joint venture required to approve a "matter of policy"; and (3) her interest was automatically forfeited under the terms of the joint venture agreement, after she failed to pay within six months of defaulting on her obligations.

■ Mrs. Friedman asserts that she is not liable because she did not sign the joint venture agreement or the $300,000 note. Texas Revised Civil Statutes Annotated article 6132b, § 28–B(1)(A) (Vernon 1970) provides that upon the divorce of a partner, the partner's spouse shall, to the extent of her interest in the partnership, be regarded as an assignee or purchaser of the interest from the partner. The agreement incident to divorce transferred a seven percent interest in the joint venture to Susanna Friedman. The legal effect of a division of the partnership interests was to vest a proportional amount of the community interest in each party. *Mundy v. Mundy*, 653 S.W.2d 954, 957–58 (Tex.App.—Dallas 1983, no writ).

The divorce settlement agreement was clear in stating that Mrs. Friedman would receive a seven percent interest in NWV. The settlement further stated that she was responsible for any debts incurred on property she was awarded, which included the seven percent interest in the NWV joint venture. The agreement was not ambiguous, and Mrs. Friedman became a member of the joint venture by entering into the settlement agreement.

■ However, even if Susanna Friedman was not a partner in the joint venture, at the very least, there is evidence to support a finding of partnership by estoppel. Texas Revised Civil Statutes Annotated article 6132b, § 16(1)(a) (Vernon 1970) provides that a person is liable as though she were an actual member of the partnership, where she represents herself to be a partner in an existing partnership, and another party has extended money in good faith on the basis of the representation. *See also Gray v. West*, 608 S.W.2d 771, 778 (Tex. Civ.App.—Amarillo 1980, writ ref'd n.r.e.). On April 17, 1985, Mrs. Friedman signed an agreement as a partner with a seven percent interest in the joint venture, authorizing Leon Samet to obtain a loan in the amount of $50,000 on behalf of the partnership. She also agreed to contribute her pro rata portion of seven percent of the amount needed in the event of a shortage of capital. A $50,000 loan was obtained from the Bank of Houston pursuant to that agreement. A $300,000 loan was subsequently obtained from the Bank of Houston on July 16, 1986, long after Mrs. Friedman signed the authorization for the $50,000 loan. Therefore, Mrs. Friedman had already represented herself to the Bank of Houston as a joint venturer in NWV by the time Mr. Friedman executed the $300,000 note in his capacity as trustee, listing the partnership address. Although Mrs. Friedman attempts to avoid liability because she did *not* sign the $300,000 note, she does not contend that it was an unauthorized act of the partnership. A contract made for the firm's benefit is binding on the partnership even though executed in the name of one partner only. *Corinth Joint Venture v. Lomas & Nettleton*, 667 S.W.2d 593, 595

(Tex.App.—Dallas 1984, writ dism'd); *Boyd v. Leasing Assoc., Inc.*, 516 S.W.2d 485, 489 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.). The fact that the remaining partners paid their pro rata shares further demonstrates that this was a partnership debt. Finally, Mrs. Friedman never objected to the partnership's filing of tax returns on her behalf, which indicated her seven percent interest in the joint venture.

We reject her first theory.

■ Mrs. Friedman also asserts that she is not liable because Zinn, Hiller, and Samet executed a note on behalf of the joint venture and did not obtain the requisite 70 percent vote of the members of the joint venture needed in order to act on matters of policy. In support of her assertions she cites *RGS, Cardox Recovery, Inc. v. Dorchester Enhanced Recovery Co.*, 700 S.W.2d 635, 638–39 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.), *Vail v. Henry S. Miller Co.*, 592 S.W.2d 410, 411–12 (Tex.Civ.App.—Dallas 1979, no writ), *Eggers v. Hinckley*, 683 S.W.2d 473, 476–77 (Tex.App.—Dallas 1984, no writ), and *Corinth Joint Venture v. Lomas & Nettleton*, 667 S.W.2d 593, 597 (Tex.App.—Dallas 1984, writ dism'd). In each of these cases, it is understood, if not explicitly stated, that an act by one or more members of the joint venture must be authorized before it is binding on the partnership.

Mrs. Friedman attempts to escape liability by stating that the execution of the $39,945.21 note by Zinn, Hiller, and Samet was an unauthorized act of the joint venture. Zinn, Hiller, and Samet satisfied Mrs. Friedman's pro rata portion of liability under the $300,000 note by executing a $39,945.21 note. Whether the $300,000 note was paid by these three persons in their individual capacities, or by an allegedly illegal partnership act, does not change the fact that she did not pay her pro rata share of the liability arising under the $300,000 and $50,000 notes. The suit is based on the failure of Mrs. Friedman to satisfy cash calls made upon her by the joint venture. Mrs. Friedman cannot be permitted to excuse herself from a preexisting liability because of a subsequent alleged violation of the joint venture agreement in the execution of a $39,945.21 promissory note, where the execution of that note was made necessary by Mrs. Friedman's lack of financial responsibility. Mrs. Friedman's second theory is rejected.

■ In support of her third theory, Mrs. Friedman asserts that she was released from the joint venture because she had not paid her pro rata share within the six-month period, thus forfeiting her rights in the joint venture to the parties who paid her debts. She cites *Shindler v. Harris*, 673 S.W.2d 600, 607, 609 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.), where this Court enforced a forfeiture provision against the defaulting party for failing to tender his share of the funds call within the applicable time period. The court stated that Tex.Rev.Civ.Stat.Ann. art. 6132b, § 42 (Vernon 1970), governing the rights of retiring or dying partners when the business is continued, did not apply to that suit because the partner had been "expelled." *Shindler*, 673 S.W.2d at 608. Furthermore, the agreement in *Shindler* explicitly provided that a partner could drop out of the venture without risking potential liability should his default cause financial loss to the remaining partners. *Id.* at 609. The court noted that had the agreement not contained such a provision, the default would have given rise to a common law cause of action against the defaulting venturer. *Id.* In our case, no provision stated that a joint venturer would not be liable in the event of default. This case is not one in which the remaining joint venturers are seeking to enforce the forfeiture provision, but rather is a situation where a party seeks to avoid liability by relying on a provision intended for the benefit of the other parties to the agreement. To hold that Mrs. Friedman may avoid liability, simply because the forfeiture provision states that her interest will be reduced to zero in the event of her default, would encourage the remaining partners to fail to meet their financial obligations. We reject Mrs. Friedman's third theory.

We overrule Mrs. Friedman's point of error.

The judgment is affirmed.