NUMBER 13-97-312-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

 ___________________________________________________________________ 



CCR, INC., W. T. YOUNG, et al., Appellants, 



v.

 

CHAMBERLAIN, et al., Appellees. 

___________________________________________________________________ 



On appeal from the 347th District Court

of Nueces County, Texas.

 ___________________________________________________________________ 



O P I N I O N

 Before Justices Hinojosa, Yañez, and Rodriguez

Opinion by Justice Yañez

 


 Appellants, CCR, Inc.,(1) W.T. Young Construction Company, W.T. Young, and Glen Young, sued appellees,
Chamberlain, Hrdlicka, White, Johnson, & Williams; Chamberlain, Hrdlicka, White, Williams & Martin; James J. Spring
III; and numerous other entities and individuals affiliated with the Chamberlain law firm, alleging legal malpractice,
breach of fiduciary duty, fraud, Deceptive Trade Practices Act violations, civil conspiracy and breach of contract. The trial
court entered summary judgments against W.T. Young Construction Company, W.T. Young, and Glen Young ("the
Youngs") on the ground they lacked standing to sue, against CCR as to its claims with a two-year limitations period, and in
favor of seventeen individual defendants who claimed they were not partners of the firm. We reverse and remand in part,
and affirm in part. 

 In August of 1989, Glen and W.T. Young had discussions with Keith Hudson(2) and James J. Spring III,(3) concerning
raising substantial funds to finance the operation, expansion, and acquisition of various subsidiaries of CCR, a Utah
corporation of which their families were controlling shareholders. Glen and W.T. were the chief operational and executive
officers of CCR. The parties planned to have CCR form another subsidiary which would issue bonds to be sold in Europe.
Approximately eighty-five percent of the proceeds of the bond sales would be invested in U.S. government securities and
approximately fifteen percent would be put in "loan portfolios," i.e., loaned to the Youngs to meet their objectives. The
plan involved the formation of other entities, which would be involved in the handling of portions of the loan proceeds and
the management of the loan portfolios. Apparently, such a plan would result in substantial residual fees to be paid to Glen
and W.T. and their families personally, separate and apart from the corporate entities. Glen and W.T. discussed these
residual fees on more than one occasion. 

 On August 30, 1989, W.T., as president of CCR, signed an engagement letter retaining the Chamberlain law firm to
prepare the legal work for the bond offering. CCR forwarded $250,000 to appellees for the purpose of the investments. 
Hudson, who was not a Chamberlain firm lawyer, was responsible for selling the bonds. Hudson had been previously
convicted of embezzlement, a fact which was known to some Chamberlain lawyers, but never revealed to the Youngs. The
bond transactions never materialized. Spring represented to the Youngs that the bond offering failed because of the
business climate. 

 Hudson was subsequently charged with, and convicted of, felony theft in connection with the proposed bond transaction. 
Appellants filed the instant lawsuit, complaining, in part, of the Chamberlain firm's failure to disclose Hudson's prior
conviction and seeking to recover for losses associated with the failed investments. 

 
 After granting the summary judgments, the trial court severed the instant parties and claims, resulting in a final
appealable order. By five points of error, appellants challenge the propriety of the summary judgments. 

Standing

 In point of error three, appellants assert the trial court erred in granting summary judgment on the basis the Youngs lacked
standing to sue. The motions for summary judgment presented by appellees raise two grounds for summary judgment: (1)
the Youngs' legal malpractice and related claims(4) were barred by the "privity rule," i.e.,that persons outside of the
attorney-client relationship have no standing to sue attorneys for negligence associated with the representation of another,
and (2) the Youngs lacked standing to assert any claims for the corporation, CCR. Appellees conclude the motion by
stating summary judgment should be granted because the only entity which "sought or acquired services from the firm was
CCR." 

Attorney-Client Relationship and Right to Sue

 Persons outside the attorney-client relationship have no cause of action for injuries they might sustain due to the attorney's
failure to perform a duty owed to his client. Berry v. Dodson, Nunley & Taylor, P.C., 717 S.W.2d 716, 718 (Tex.
App.--San Antonio 1986), writ granted, judgment set aside by agr., 729 S.W.2d 690 (citations omitted). 

 Under the privity rule, only the actual client is entitled to sue for legal malpractice associated with the representation of a
client; non-clients may not sue a lawyer for his negligence in representing a client, even if they are affected by the
negligence. Barcelo v. Elliott, 923 S.W.2d 575, 577-78 (Tex. 1996). The privity rule ensures that an attorney's
representation of a client will not be compromised by the threat of suit by third parties who also have an interest in the
subject of the representation. Id. at 578-79 (attorney owes no duty to non-client third parties, even if third parties are
damaged by the negligent representation). 

 An attorney-client relationship may be either express or implied from the conduct of the parties. Burnap v. Linnartz, 914
S.W.2d 142, 148 (Tex. App.--San Antonio 1995, writ denied)(citations omitted);Yaklin v. Glusing, Sharpe & Krueger, 875
S.W.2d 380, 383 (Tex. App.--Corpus Christi 1994, no writ). The parties must manifest an intention to create an
attorney-client relationship, Parker v. Carnahan, 772 S.W.2d 151, 156 (Tex. App.--Texarkana 1989, no writ); however, the
attorney-client relationship is not difficult to establish. Ins. Co. of North America v. Westegren, 794 S.W.2d 812, 814 (Tex.
App.--Corpus Christi 1990) (original proceeding). The conduct of the parties and their course of dealing are factors to be
considered in determining whether an attorney-client relationship has been established. Vinson & Elkins v. Moran, 946
S.W.2d 381, 402-04 (Tex. App.--Houston [14th Dist.] 1997, writ dism'd by agr.). When the defendant moves for summary
judgment because no attorney-client relationship exists, the defendant takes on the burden of proving the absence of the
relationship as a matter of law. See Yaklin, 875 S.W.2d at 383. 

 It is well-established that the party moving for summary judgment has the burden of showing no genuine issue of material
fact exists and he is entitled to judgment as a matter of law. Nixon v. Mr. Property Management Co., 690 S.W.2d 546,
548-49 (Tex. 1985). When a defendant moves for summary judgment based on a lack of standing, he must conclusively
establish the defense as a matter of law. Safeway Managing General Agency, Inc. v. Clark & Gamble, 985 S.W.2d 166,
169-70 (Tex. App.--San Antonio, 1998, no pet.) (citations omitted). In deciding whether a material fact dispute precludes
summary judgment, we take all evidence favorable to the non-movant as true, resolve any doubts in favor of the
non-movant, and indulge every reasonable inference in favor of the non-movant. Nixon, 690 S.W.2d at 548-49. In support
of their motions, appellees submitted summary judgment evidence, which they contend shows the only attorney-client
relationship established was between the Chamberlain firm and CCR, and that the Youngs, therefore, lacked standing to
sue. Appellants argue their summary judgment evidence raises a fact question as to whether the Youngs, separate and apart
from CCR, had an attorney-client relationship with the Chamberlain firm. We examine the summary judgment evidence to
determine whether the appellees established the absence of an attorney-client relationship as a matter of law. 

 Appellees rely primarily on the engagement letter and the deposition testimony of Glen Young. On August 28, 1989,
Spring sent a letter to W.T. Young, Glen Young, and CCR, Inc., regarding a request to serve as counsel to CCR in the
proposed sale of corporate bonds. The letter explains the types of services to be provided to CCR and the fee schedule. 
W.T. Young, as president of CCR, Inc., accepted the terms set forth in the letter by signing and returning it to Spring. 
While the letter evidences an express attorney-client relationship between CCR and the firm, it does not negate an
attorney-client relationship between the Youngs and the firm. See Yaklin, 875 S.W.2d at 384 (summary judgment evidence
establishing lawyer had an attorney-client relationship with bank in a transaction did not negate the possibility of
attorney-client relationship with another party to the same transaction). 

 Appellees argue Glen Young's deposition testimony also establishes that no attorney-client relationship existed as a matter
of law. Glen testified as follows: 

Q: Are you claiming in this case that the Chamberlain law firm was the attorney for W.T. Young Construction Company? 



A: I would assume that if they were the attorney for CCR, then it would be considered the attorney for the subsidiaries,
too; but I'm not sure. I guess that's a legal question. 



Q: Okay. Other than the fact that W.T. Young Construction Company was a subsidiary of CCR, do you have any facts or
any reasons to believe that the Chamberlain law firm represented the construction company specifically? 



A: In what respect? In what case or what respect? 



Q: In any respect. 



A: I don't know of any respect. 



Q: All right. So, as far as you know, if there was an attorney/client relationship between the law firm and the construction
company, it would arise solely because the construction company was a subsidiary of CCR? 

 . . . . 



A: My factual understanding is that's it, that's correct. 



Q: [B]ecause, to the best of your knowledge, the law firm wasn't doing any legal work specifically for the construction
company? 



A: Not to my knowledge. 



Q: All right. How about you personally, Mr. Young? Was the law firm your personal attorney?



A: Which law firm? 



Q: The Chamberlain law firm? 



A: No, not to my knowledge. 



Q: And how about your brother? Was the law firm your brother's personal attorney?



A: Not to my knowledge, but I can't tell you for sure. He'd have to answer that question. 



Q: Do you know if you're claiming in this case that there was an attorney/client relationship between the law firm and you
personally, sir? 



A: From a factual standpoint, I don't think so. From a legal standpoint, I don't know.



Q: Okay. As far as you know factually, you don't believe there was an attorney/client relation between you personally and
the law firm-- 



A: I don't think so.



Q: -- or, to the best of your knowledge, your brother or the law firm? 



A: To the best of my knowledge. 



Q: No, there was not an attorney/client relationship? 



A: That's correct. 



(Emphasis supplied). 

 Appellees argue this testimony constitutes a judicial admission that no attorney-client relationship existed between the
Youngs and the Chamberlain firm. A party's testimonial declarations which are contrary to his legal position are
quasi-admissions. Mendoza v. Fidelity & Guaranty Ins. Underwriter, Inc., 606 S.W.2d 692, 694 (Tex. 1980). Such
statements are some evidence and the weight to be given them is decided by the trier of fact. Id. A party's
quasi-admissions will be given conclusive effect only when they meet certain requirements, including that they are
deliberate, clear, and unequivocal. Id. Moreover, when the testimony is modified or explained, admissions are not given
conclusive effect. Griffin v. Superior Ins. Co., 338 S.W.2d 415, 418 (Tex. 1960). 

 Glen's deposition testimony is not a judicial admission. First, the testimony is equivocal, particularly as to W.T.'s and
W.T. Young Construction Company's relationship with the firm. Second, the summary judgment record includes evidence
that Glen and W.T. simultaneously hired various attorneys for business as well as personal reasons. As appellants argue in
their brief, it is reasonable to infer that Glen attached some special significance to the term "personal attorney." Most
importantly, the Youngs submitted summary judgment evidence explaining the relationship between the parties. In an
affidavit, Glen explains that while he and W.T. never considered Spring or the Chamberlain firm as their "'personal
attorneys,' some of the work they did, and for which [the firm] charged us, and we paid included meetings and discussions
pertaining to our families' personal ownership interest in the residual fee generating entities which they envisioned." Glen
states Spring represented that residual fees earned in connection with the bond program would be paid to Glen, W.T., and
their families, "separate and apart from the corporate entities." Glen also states that the firm's claim "that CCR, Inc. was
the only client and that they never purported to render professional services" to the Youngs is "contrary to the way they
treated us during the entirety of our working relationship with them." Finally, Glen's affidavit says "a portion of what we
were billed and paid for included discussions with Mr. Spring pertaining to our families' interests in the other proceeds to
be generated by the bond program." 

 The summary judgment record contains other evidence which raises a material fact question about the existence of an
attorney-client relationship between the Youngs and the firm. Appellants submitted a letter dated January 30, 1990
addressed to Mr. E. Glen Young and CCR, Inc., signed by Spring, in which Spring writes, "I will be calling you next week
to talk about how to structure your family's investment in Hudson Capital Management, Inc., so that you can participate in
the residual proceeds of the bond program." 

 In his deposition, Spring states the Youngs were personally interested in obtaining the benefit of some of the fees of a
successful bond program and that, even though he never commenced any work to implement such a plan, he had meetings
with the Youngs specifically to discuss these matters. Spring testified as follows: 

A: [T]he only other area I think might be encompassed by your question, which was a pretty broad question, was the fact
that -- that the Youngs were personally interested in what would be the fees that were payable out of a successful bond
program. 



 They certainly discussed with me the possibility of getting the--the benefit of some of those fees personally. We didn't
take any action to implement that and---they didn't give any--give me any instructions to implement--do any contracts, do
any work that would have made those fees inure to their personal benefit instead of to the benefit of their corporation. 



Q: Didn't you have specific conferences and meetings with them just for that purpose? 



A: Yes. As I said, we've discussed that. 

 

 To further support their contention that a material fact dispute exists as to whether an attorney-client relationship was
established with the Youngs, appellants point to Spring's testimony from Hudson's 1992 criminal trial. This evidence
shows the prosecutor repeatedly questioned Spring about working for the Youngs, entering into contracts with the Youngs,
and being hired by the Youngs. Spring never once corrected the prosecutor or clarified in this testimony that his actual
client was the corporation, CCR. 

 Finally, a July 20, 1992 internal memo written by Robert I. White, a Chamberlain lawyer, to Spring and Shelley J.
Cashion, another Chamberlain lawyer, states: "With respect to certain individuals and/or companies named Young, we
were in a dual representation and potential conflict situation, but both Young and Hudson were aware and waived the
potential conflict." (Emphasis added). Appellees argue this evidence is outside the summary judgment record because the
trial court ordered the return of this privileged document. We see no reason to exclude the document from the summary
judgment record where the trial court issued an order specifically allowing use of the document "in the appeal of the
summary judgments entered in this action." 

 Appellees argue Spring's discussions with the Youngs regarding the residual fees were merely incidental to the bond work
performed on behalf of CCR. According to appellees, the Youngs' expectation of a benefit from the bond program is
comparable to will beneficiaries who have been held to have no legal malpractice claim for a negligently drafted will. See
Barcelo, 923 S.W.2d at 578-79. However, in Barcelo, there was no evidence of an independent attorney-client relationship
between the beneficiaries and the lawyer. In this case, appellants presented evidence Spring sought to advise the Youngs
individually about the residual fees and actually did consult with them about these matters. The summary judgment
evidence also shows that Chamberlain lawyers believed "individuals and/or companies named Young" were being
represented by the firm. Indulging every reasonable inference in favor of the non-movant, as we are required to do at this
juncture, we conclude a material fact question exists as to whether an attorney-client relationship existed between the
Youngs and the Chamberlain firm. Because the appellees failed to establish as a matter of law that the Youngs have no
standing to sue, the trial court erred in granting summary judgment against the Youngs. 





Corporate Standing and Shareholders' Right to Sue

 A shareholder may not recover damages for an injury done solely to the corporation, even though he may be injured by that
wrong. Wingate v. Hajdik, 795 S.W.2d 717, 719 (Tex. 1990). This rule, however, does not prohibit a shareholder from
recovering damages for wrongs done to him individually where the wrongdoer violates a duty owed directly to the
shareholder. Id.; Murphy v. Campbell, 964 S.W.2d 265, 268 (Tex. 1998) (stockholders had standing to sue accountant for
malpractice where he counseled not only corporation, but also stockholders). In other words, a shareholder may recover if
he proves a personal cause of action and a personal injury. Murphy, 964 S.W.2d at 268; Wingate, 795 S.W.2d at 719. 

 Point of error number three is sustained. 

Statute of Limitations

 By their fourth point of error, appellants complain the trial court erred in granting summary judgment on all claims
governed by the two-year statute of limitations. The trial court ordered that "CCR take nothing against Movants on all
causes of action governed by the two-year statute of limitations." The Chamberlain firm and Spring presented the
affirmative defense of limitations as to the Youngs' claims in their summary judgment motions; however, because the trial
court dismissed the Youngs' claims based on a lack of standing, it never considered the limitations issue. 

 An appellate court may, in the interest of judicial economy, consider whether summary judgment was proper on grounds
upon which the trial court did not rule, if those issues were preserved for appellate review. Cincinnati Life Ins. Co. v.
Cates, 927 S.W.2d 623, 624 (Tex. 1996). The statute of limitations was raised by appellees in the trial court and
adequately argued in the briefs to preserve the matter for our review.(5) Even though the trial court never ruled on
limitations as to the Youngs, in the interest of judicial economy, we address whether the appellees conclusively established
their limitations defense. 

 When seeking summary judgment based on limitations, the defendant must conclusively prove when the cause of action
accrued. Velsicol Chem. Corp. v. Winograd, 956 S.W.2d 529, 530-31 (Tex. 1997); Burns v. Thomas, 786 S.W.2d 266, 267
(Tex. 1990). If the non-movant pleads the "discovery rule," however, the summary judgment movant must also negate the
discovery rule by proving either that it does not apply as a matter of law, or there is no genuine issue of fact about when the
plaintiff discovered the nature of the injury. Burns,786 S.W.2d at 267; Woods v. William M. Mercer, Inc., 769 S.W.2d 515,
518 n. 2 (Tex. 1988). In the instant case, the appellants pleaded the discovery rule and the doctrine of fraudulent
concealment.(6) Therefore, in order to succeed in their limitations defense, the appellees were required to establish when the
claims accrued, and either negate the application of the discovery rule, or show there was no genuine issue of material fact
as to when the Youngs discovered or should have discovered the nature of the injury. 

 In their summary judgment motions, appellees did not dispute the applicability of the discovery rule in this case, but rather,
attempted to establish as a matter of law that there was no material fact dispute as to when the Youngs discovered or should
have discovered the nature of their injury.(7)

 Appellees argued all causes of action governed by the two-year statute of limitations were time-barred because the
appellants filed suit in June of 1993, more than two and a half years after the alleged injury occurred. Stating in their
motions that the "determinative date of 'accrual' of the claim is the date of discovery of the injury," appellees argued to the
trial court that because the Youngs knew the bond deal was dead by the fall of 1990, they had full knowledge of their injury
more than two years before filing suit. 

 The discovery rule delays the accrual of a cause of action until the plaintiff discovers, or in the exercise of reasonable
diligence should have discovered, the nature of his injury. Childs v. Haussecker, 974 S.W.2d 31, 40 (Tex. 1998) (citations
omitted). Despite appellees' arguments to the contrary, discovering the "nature of the injury" requires knowledge of both
the wrongful act and the resulting injury. Id.; Murphy, 964 S.W.2d at 270; S.V. v. R.V.,, 933 S.W.2d 1, 4 (Tex.
1996);Allen v. Roddis Lumber and Veneer Co., 796 S.W.2d 758, 761 (Tex. App.--Corpus Christi 1990, writ denied) (cause
of action accrues when the plaintiff discovers not only the injury, but also its cause). As the supreme court recently
explained: 

[W]hen the discovery rule applies, accrual is tolled until a claimant discovers or in the exercise of reasonable diligence
should have discovered the injury and that it was likely caused by the wrongful acts of another. But once these
requirements are satisfied, limitations commences, even if the plaintiff does not know the exact identity of the wrongdoer. 



Childs, 974 S.W.2d 31, 40 (Tex. 1998) (citations omitted) (emphasis supplied). 

 Appellees' summary judgment proof includes deposition testimony from the Youngs that they knew in the "fall of 1990" 
and "late 1990" that the bond deal was probably never going to close and that the damages to W.T. Young Construction
Company probably began in the spring or summer of 1990. Appellees also submitted the affidavit of George Binse, in
which he states he told Glen Young in November of 1990 that the bond deal was dead and Glen said he was "not
surprised." Binse also averred that he told Glen that Hudson was a "crook and a convicted felon" in April of 1991. 

 Appellants attempted to controvert this evidence by offering an affidavit in which Glen testified Binse was incorrect and
that he did not learn Hudson was a convicted felon until sometime after July 1, 1991.(8) Glen also stated in the affidavit that
at no time prior to July 1, 1991, was he informed or did he learn from any other source that: (1) Hudson had a prior felony
conviction involving improper lending activities from a bank; (2) the Chamberlain firm represented Hudson during his
prior imprisonment; (3) Chamberlain lawyers knew of Hudson's prior felony conviction at the time the Youngs were
considering hiring the Chamberlain firm and Hudson; or (4) at the time he hired the Chamberlain firm, the firm had an
ongoing attorney-client relationship with Hudson. 

 We conclude the summary judgment record contains conflicting evidence as to when the Youngs discovered, or in the
exercise of reasonable diligence should have discovered, both their injury and that it was likely caused by the wrongful acts
of another. Appellants claim Spring represented the bond program's failure was merely because of the business climate. 
We cannot say as a matter of law that notice of the bond program's failure is sufficient to apprise the Youngs of the "nature
of their injury." Indeed, if an attorney-client relationship in fact existed between Spring and the Youngs, the nature of the
relationship may have entitled the Youngs to rely on Spring's explanations, rather than to investigate alternative reasons for
the bond transaction's failure. See Murphy, 964 S.W.2d at 270 (discovery rule may delay accrual of cause of action for
faulty professional advice because of the difficulty a lay person has in knowing the fault of the advice); Willis v. Maverick,
760 S.W.2d 642, 645 (Tex. 1988) (citation omitted) ("Facts which might ordinarily require investigation likely may not
excite suspicion where a fiduciary relationship is involved."). 

 Spring contends that because Hudson's prior conviction was a matter of public record, the Youngs had constructive notice
of the cause of their injury. Again, this argument was not presented to the trial court, and therefore, we are precluded from
addressing it in the context of this appeal. 

 Because there is a material fact issue as to when the Youngs discovered, or in the exercise of reasonable diligence should
have discovered, the nature of their injury, we hold appellees failed to establish their limitations defense as a matter of law. 
Based on our conclusion that appellees failed to establish when the Youngs discovered the nature of their injury as a matter
of law, we need not address whether appellants have raised a fact question as to fraudulent concealment. Point of error
number four is sustained.

No Partner Liability

 In point of error two, appellants argue the trial court erred in dismissing seventeen appellees from the suit on the basis they
had no partnership liability. Appellees alleged in separate summary judgment motions that they were not jointly and
severally liable for the obligations of the firm because they were not partners. Appellees submitted affidavits stating they
either had not been a partner during the relevant period, had never been a partner, or the corporate entity which had been a
partner ceased to exist. They further stated they practiced law as a shareholder and employee of the firm, never represented
to anyone that they were a partner and were not aware of any person representing them to be a partner, never communicated
with the appellants or were involved in the legal services rendered to CCR, and received salary checks rather than
partnership draws. 

 On appeal, appellants do not argue appellees failed to meet their summary judgment burden, but rather that the summary
judgment evidence raises a material fact dispute. Appellants argue in their brief that the following summary judgment
evidence controverts appellees' claims that they were not partners: 

1. Verbal representations made by James Spring as to his own partner status and general references to other firm lawyers as 
"partners." 



2. Representations in the August 28, 1989 engagement letter that "tax partners" and "securities partners" would perform
certain legal services. 



3. Hudson's and John Johnston's testimony that firm lawyers generally referred to themselves as partners or associates. 



4. Spring's reference in Hudson's 1992 criminal trial that Shelley Cashion was one of his tax "partners." 



5. Cashion's testimony in Hudson's 1992 criminal trial in which she refers to her relationship with her "partners." 



6. Statements by appellees' lawyers in depositions, hearings, and in one motion in the present litigation identifying
appellees collectively as the "former partners," "past and present partners," and the "Chamberlain, Hrdlicka partners." 



 Appellants argue this evidence creates a reasonable inference the firm was a partnership. The summary judgment record
reflects, and appellants acknowledge, the firm was comprised of two primary partners, Chamberlain, Hrdlicka, White,
Williams & Martin, a Georgia P.C., and Chamberlain, Hrdlicka, White, Williams & Martin, a Texas P.C., as well as
several other partners which were individual professional corporations. The issue, however, is not whether appellants
raised a fact issue as to the existence of a partnership, but whether appellants controverted appellees' evidence they were
notpartners in the firm from August of 1989 to fall of 1990, the time the firm is alleged to have represented the Youngs. 
The evidence appellants cite in their brief fails to raise a fact issue as to whether the appellees were partners during the
relevant period. 

 Focusing on information presented in the Martindale-Hubbell Law Directory, appellants argue the summary judgment was
improper because there is conflicting evidence as to whether appellees held themselves out as partners. Appellants' primary
argument is not that they controverted the actual partner status of the appellees, but rather that the evidence raises a
question as to partnership by estoppel. 

 If a party opposing a summary judgment relies on a defense such as a partnership by estoppel, he must come forward with
summary judgment proof sufficient to raise an issue of fact on each element of the defense. See Baptist Memorial Hosp.
Sys. v. Sampson, 969 S.W.2d 945, 947 (Tex. 1998) (where hospital met summary judgment burden in negligence case by
establishing as a matter of law that treating doctor was not its agent or employee, burden shifted to plaintiff to raise a fact
issue on each element of ostensible agency); Ryland Group, Inc. v. Hood, 924 S.W.2d 120, 121 (Tex. 1996) (once movant
established entitlement to summary judgment based on limitations, nonmovants had burden to raise fact issue on their
affirmative defenses of fraudulent concealment and willful misconduct); Brownlee v. Brownlee, 665 S.W.2d 111, 112 (Tex.
1984). 

 Partnership by estoppel consists of two elements: (1) a representation that the one sought to be bound is a partner; and (2)
the one to whom the representation is made must rely on the representation. Paramount Petroleum Corp. v. Taylor Rental
Center, 712 S.W.2d 534, 538 (Tex. App.--Houston [1st Dist.] 1986, writ ref'd n.r.e.). The representation may be made
directly by the alleged partner, or by others, provided the alleged partner knowingly allows others to make the
representation and fails to correct them. Id. 

 The summary judgment evidence fails to raise a fact issue as to both the representation and reliance elements of
partnership by estoppel. There is some evidence Spring made broad references to "partners" in his communications with the
Youngs; however, there is no evidence of specific representations made to the Youngs about the partner status of any
appellee. 

 We also are unpersuaded that Martindale-Hubbell represents the appellees as "partners." The Martindale-Hubbell listings
identify the Chamberlain firm as a "Partnership including Professional Corporations" and then categorize each lawyer in the
firm under either the heading of "Members of Firm," "Of Counsel," or "Associates."(9) The Martindale-Hubbell listings do
not state the appellees are partners in the firm. 

 Even if the Martindale-Hubbell listing raises a fact question as to the element of representation, the evidence fails to raise
a fact question on the element of reliance. As demonstrated by W.T. Young's deposition testimony, at the time the firm
was retained, he did not know the identity of the lawyers, partners, or shareholders in the firm, with the obvious exception
of Spring. It is also undisputed the Youngs never consulted Martindale-Hubbell, and therefore, never relied on this
information. 

 In reply, appellants argue they are not required to raise a fact issue as to reliance. Appellants assert that when a partnership
representation has been made in a "public manner," such as in Martindale-Hubbell, the alleged partner is estopped to deny
liability, whether or not the representation has been communicated to the relying party. In support of this argument,
appellants cite to the Texas Uniform Partnership Act, which provided in relevant part: 

 §16. Partner by Estoppel 



Sec. 16. (1) When a person, by words spoken or written or by conduct, represents himself, or consents to another
representing him to any one, as a partner in an existing partnership or with one or more persons not actual partners, he is
liable to any such person to whom such representation has been made, who has, on the faith of such representation, given
credit to the actual or apparent partnership, and if he has made such representation or consented to its being made in a
public manner he is liable to such person, whether the representation has or has not been made or communication to such
person so giving credit by or with the knowledge of the apparent partner making the representation or consenting to its
being made . . . . 



Texas Uniform Partnership Act, May 16, 1961, 57th Leg., p. 289, ch. 158 (expired 1999)(emphasis supplied).(10)

 We have found no Texas cases interpreting this language; however, other jurisdictions construing the same provisions
have held that even in public-manner representation cases, one must show reliance on the public representation to establish
partnership by estoppel. See National Premium Budget Plan Corp. v. National Fire Ins. Co., 97 N.J. Super. 149, 234 A.2d
683, 729-32 (1967), aff'd 106 N.J. Super. 238, 254 A.2d 819 (1969); Reisen Lumber and Millwork Co. v. Simonelli, 98 N.J.
Super. 335, 237 A.2d 303, 306-08 (1967); Pruitt v. Fetty, 148 W. Va. 275, 134 S.E. 2d 713 (W. Va. Sup. Ct. 1964); but see
Gilbert v. Howard, 64 N.M. 200, 326 P.2d 1085, 1087 (1958). 

 Additionally, the express language of the statute and Texas case law indicate this statute expressly applied to
circumstances involving the extension of credit to a partnership. Friedman v. West Newberry Village Assoc., 787 S.W.2d
154, 158 (Tex. App.--Houston [1st Dist.] 1992, no writ) (loans obtained based on representation of partnership);Gray v.
West, 608 S.W.2d 771, 777 (Tex. Civ. App.--Amarillo, 1980, writ ref'd n.r.e.) ("[T]he statute speaks specifically of the
giving of credit to the actual or apparent partnership on the faith of a representation of partnership. . ."); Cox Enterprises,
Inc. v. Filip, 538 S.W.2d 836, 838 (Tex. Civ. App.--Austin 1976, no writ) (applying section 16 in suit on a sworn account
for unpaid advertising services). The Youngs never extended credit to the Chamberlain firm, and therefore, this statute is
inapplicable under the facts of this case. 

 Because appellants failed to raise a material fact dispute as to appellees' actual partner status or as to each element of
partnership by estoppel, the trial court did not err in granting summary judgment. Point of error number two is overruled.

Billing Fraud Claims

 By their fifth point of error, appellants complain the trial court erred in entering summary judgment as to their billing fraud
claim. Claims for billing fraud are governed by the four-year statute of limitations. Sullivan v. Bickel & Brewer, 943
S.W.2d 477, 483 (Tex. App.--Dallas 1995, writ denied); Estate of Degley v. Vega, 797 S.W.2d 299, 303 (Tex.
App.--Corpus Christi 1990, no writ). The trial court granted summary judgment only as to the claims governed by the
two-year statute of limitations. Point of error number five is overruled. 

 By their first point of error, appellants complain that the trial court erred in granting the final summary judgment order
affirming its previous interlocutory summary judgments. The point of error duplicates points of error previously addressed
in this opinion, and therefore, is overruled. 

 The judgment of the trial court is AFFIRMED in part, and REVERSED and REMANDED, in part, to the trial court for
proceedings consistent with this opinion. 

 

____________________________________ 

LINDA REYNA YAÑEZ 

Justice 



Do not publish. 

TEX. R. APP. P. 47.3. 



Opinion delivered and filed this 

the 1st day of June, 2000. 

 

 

 

1. During the course of this appeal, the parties reached a settlement as to CCR's claims.

2. Hudson was a financial consultant; he was also a client of the Chamberlain law firm.

3. At the time of the events at issue, Spring was an attorney and shareholder in the law firm of Chamberlain, Hrdlicka,
White, Williams & Martin.

4. The privity rule applies specifically to legal malpractice claims. See McCamish, Martin, Brown & Loeffler v. F.E.
Appling Interests, 991 S.W.2d 787, 791-92 (Tex. 1999) (non-client may sue attorney for negligent misrepresentation). 

5. Appellants argue appellees, with the exception of Spring, have failed to preserve this matter for our review because they
do not specifically address limitations as to the Youngs in the briefs. We disagree. Appellees' brief argues all of the
plaintiffs' claims were barred by limitations.

6. The equitable doctrine of fraudulent concealment prevents a defendant from relying on the statute of limitations when he
has a duty to disclose, but fraudulently conceals a cause of action from the plaintiff. Casey v. Methodist Hosp., 907 S.W.2d
898, 903 (Tex. App.--Houston [1st Dist. 1995], no writ). In the summary judgment context, the nonmovant has the burden
to raise a fact issue on fraudulent concealment. Hay v. Shell Oil Co., 986 S.W.2d 772, 778 (Tex. App.--Corpus Christi
1999, pet. denied). 

 

7. On appeal, appellees argue for the first time that the discovery rule does not apply because the nature of the injury here
is not "inherently undiscoverable" and "objectively verifiable." See Computer Assoc. Int'l, Inc. v. Altai, Inc., 918 S.W.2d
453, 456 (Tex. 1995) (discovery rule applies when nature of the injury is "inherently undiscoverable" and "objectively
verifiable"). These grounds for negating the application of the discovery rule were never presented to the trial court, and
therefore, we do not consider them on appeal. 

8. This affidavit is actually attached to the Youngs' second supplemental petition wherein they pleaded the discovery rule. 
The affidavit is specifically referenced in appellants' response filed on the same day as the second supplemental petition,
and therefore, is part of the summary judgment record. Kotzur v. Kelly, 791 S.W.2d 254, 257 (Tex. App.--Corpus Christi
1990, no writ) (citations omitted) (when reviewing summary judgment proof, the trial court is required to consider all
summary judgment evidence on file with the court, provided the relevant party expressly identifies in its motion or response
all supporting evidence on file which it seeks to have considered by the trial court).

9. Interestingly enough, several appellees are listed as "associates" in the 1988 and 1989 editions of Martindale-Hubbell.

10. The statute, which was in effect at the time summary judgment was granted, was derived from the Uniform Partnership
Act.