Opinion issued March 1, 2007 

 












In The

Court of Appeals

For The

First District of Texas






NO. 01-05-00318-CV






FRANCISCO JAVIER RANGEL, Appellant


V.


BOBBY ROBINSON and EDWARD MCDONALD, Appellees







On Appeal from 55th District Court 

Harris County, Texas

Trial Court Cause No. 2003-42957


 



MEMORANDUM OPINION

 Appellant, Francisco Javier Rangel, appeals from a personal-injury judgment
entered in favor of appellees, Bobby Robinson and Edward McDonald. We
determine whether (1) the trial court erred in awarding future damages that were not
discounted to present value and (2) the evidence supporting the award of punitive
damages was factually insufficient and the amount of punitive damages awarded
violated substantive due process. We affirm.

Background


 On August 4, 2001, McDonald and Robinson were struck by Rangel's vehicle
while they were walking in the grass along a service road. (1) Although he realized that
he had hit something or someone, Rangel left the accident scene without stopping to
render aid to McDonald and Robinson. Rangel had consumed approximately 15 to
20 beers that day. Despite a warning from his brother that he was too intoxicated to
drive, Rangel had driven anyway. After the accident, Rangel was arrested,
subsequently pleaded guilty to and was convicted of intoxication assault, and was
assessed punishment at 30 days in jail, eight years of community supervision, 300
hours of community service, and a two-year suspension of his driver's license.

 As a result of Rangel's hitting him, McDonald had a serious spinal injury and
had to learn again how to walk, to balance himself, and to use his hands. At the time
of trial, McDonald still had not recovered fully from his injuries: he walked with a
cane, he had weakness in his legs, and he had not regained the full use of his hands
and fingers. McDonald also needed assistance bathing himself, buttoning his
clothing, tying his shoes, and performing housekeeping duties. McDonald was 63
years old at the time of the accident. Prior to the accident, McDonald had been
employed as a truck driver and furniture mover. His job responsibilities had required
him to lift heavy objects on a daily basis. McDonald had not planned to retire until
he was 72 or 73 years old.

 As a result of Rangel's hitting him, Robinson had significant weakness in both
arms and a large laceration on the back of his neck. Robinson had major neck
surgery, which realigned his spine and fused a hip bone to the spine, along with a
plate, to stabilize his neck. At the time of trial, Robinson had not recovered fully
from his injuries: he had weakness while walking and while using his hands to lift.

 After a bench trial, the trial court rendered judgment in favor of McDonald and
Robinson, awarding McDonald total actual damages in the amount of $828,453.71
and punitive damages in the amount of $500,000 and awarding Robinson total actual
damages in the amount of $458,649.86 and punitive damages in the amount of
$500,000. Specifically, McDonald received actual damages in the amounts of
$58,383.71 for past medical expenses, $262,700 for future medical expenses,
$117,300 for past pain and suffering, $25,000 for future pain and suffering, $50,000
for past physical impairment, $50,000 for future physical impairment, $100,000 for
past loss of earning capacity, and $165,000 for future loss of earning capacity. 
Robinson received actual damages in the amounts of $171,149.86 for past medical
expenses, $12,500 for future medical expenses, $150,000 for past pain and suffering,
$25,000 for future pain and suffering, $50,000 for past physical impairment, and
$50,000 for future physical impairment.

 Future-Damages Awards


 In his first point of error, Rangel argues that the trial court erred by awarding
future damages without discounting those awards to present value. Specifically,
Rangel argues that the trial court erred when it failed to discount (1) McDonald's
future-damages award for future medical expenses and future loss of earning capacity
and (2) Robinson's future-damages award for future medical expenses.

A. Standard of Review and the Law

 Appellate courts may consider the sufficiency of the evidence to support a trier
of fact's finding on damages. Girdner v. Rose, No. 11-04-00272-CV, 2006 WL
3230361, at *4 (Tex. App.--Eastland Nov. 9, 2006, no pet.); see Anderson v. City of
Seven Points, 806 S.W.2d 791, 794 (Tex. 1991). Rule 296 of the Texas Rules of
Civil Procedure authorizes requests for findings of fact and conclusions of law in a
non-jury case. See Tex. R. Civ. Proc. 296. When, as here, neither party requests
findings of fact and conclusions of law and a reporter's record has been provided, we
presume that the trial court found all fact questions in support of its judgment. Point
Lookout W., Inc. v. Whorton, 742 S.W.2d 277, 278 (Tex. 1987). 

 A trial court has discretion to award damages within the range of the evidence
presented at trial. Duggan v. Marshall, 7 S.W.3d 888, 893 (Tex. App.--Houston [1st
Dist.] 1999, no pet.). Because personal-injury damages are unliquidated and are not
capable of measurement by a definite standard, the trier of fact is afforded broad
discretion in fixing the amount of the award. See Weidner v. Sanchez, 14 S.W.3d
353, 372 (Tex. App.--Houston [14th Dist.] 2000, no pet.) (noting that "measure of
damages in a personal injury case is not subject to precise mathematical
calculation."); J. Wigglesworth Co. v. Peeples, 985 S.W.2d 659, 665 (Tex.
App.--Fort Worth 1999, pet. denied); S. Pac. Transp. Co. v. Peralez, 546 S.W.2d 88,
98 (Tex. Civ. App.--Corpus Christi 1976, writ ref'd n. r. e.); see also Allied Stores
of Tex., Inc. v. McClure, 622 S.W.2d 618, 619 (Tex. App.--Tyler 1981, no writ).

 In personal-injury actions, the trier of fact must assess damages to accrue in the
future on the basis of their dollar amount if they were presently paid in cash. See Mo.
Pac. R.R. Co. v. Kimbrell, 334 S.W.2d 283, 286 (Tex. 1960). Texas law does not
require specific evidence of the discount rate. See Marshall v. Telecomm. Specialists,
Inc., 806 S.W.2d 904, 909 (Tex. App.--Houston [1st Dist.] 1991, no writ); Reliable
Consultants, Inc. v. Jaquez, 25 S.W.3d 336, 347 (Tex. App.--Austin 2000, pet.
denied) (citing In re Gonzalez, 993 S.W.2d 147, 160 (Tex. App.--San Antonio 1999)
(original proceeding)). The trier of fact is qualified to make a discount calculation. 
Kimbrell, 334 S.W.2d at 286. The trier of fact has the power to consider as proven
any matter that is of common knowledge. Kimbrell, 334 S.W.2d at 286 (stating,
"[W]hile the jury must assess damages to accrue in the future on the basis of their
amount if paid now in cash, still no evidence of the earning power of money must be
introduced . . . that jurors may not have sufficient knowledge of interest rates to
discount damages to their present value, but we cannot say that the average jury
composed, as we must assume, of men and women of intelligence is not acquainted
with interest rates."); see Rendon v. Avance, 67 S.W.3d 303, 310 (Tex. App.--Fort
Worth 2001, judgm't vacated w.r.m.). A trial court may also determine the discount
rate and perform the present-value calculations. See In re Gonzalez, 993 S.W.2d at
160.

B. McDonald's Future-Damages Award

 Rangel argues that the trial court erred because McDonald's future medical
expenses and future loss of earning capacity were not discounted. 

 The trial court awarded McDonald $262,700 for future medical expenses. 
However, on appeal, Rangel concedes that only part of that
amount--$203,700--should have been discounted because $59,000 for rehabilitation
therapy was "presumably to be done immediately." Dr. David Lowell testified that
McDonald's future medical expenses would be $262,778.10, which included
reoccurring annual medical costs in the amount of $20,377.81 for 10 years, plus a
one-time charge for inpatient rehabilitation in the amount of $59,000. Dr. Lowell
based his calculations on a "Life Care Plan," trial exhibit 303, that he prepared prior
to trial to evaluate and to detail McDonald's future medical expenses. The Life Care
Plan indicated that it was made "for the purpose of preparing a life care plan to
address [McDonald's] life care needs and their associated present day costs."
(Emphasis added.) Nonetheless, Rangel relies on the following testimony of Dr.
Lowell to show that McDonald's future-damages calculations were not discounted:

 [Rangel's Counsel:] So, the--sums of money that we see
in your report pertaining to future care, future equipment,
those have not been brought to present value, correct?


 [Dr. Lowell:] The future. That's correct.


However, on re-direct examination Dr. Lowell clarified his answer:


 [McDonald's Counsel:] And I believe that counsel asked
you a question about whether your estimated for future care
needs have been reduced to present value. Dr. Lowell, have
you taken into account any adjustments for inflation in the
future in rendering these opinions?


 [Dr. Lowell:] No.

 

From this evidence as well as from the purpose indicated in the Life Care Plan, the
trial court could reasonably have determined that the total future medical expenses
that McDonald would incur were greater than $262,700 and that the present value
discount was offset by rising future costs. 

 Likewise, Dr. Edwin Hanson prepared a vocational evaluation report, trial
exhibit 301, to calculate McDonald's future loss of earning capacity. Dr. Hanson
based his calculation of $169,150 for future-loss-of-earning-capacity damages for five
years (2) at the annual net wages of $33,830, (3) which was the Texas Workforce
Commission's average wage rate for truck drivers operating out of the Dallas, Texas
area at the time of McDonald's evaluation. At trial, Rangel's counsel questioned Dr.
Hanson about whether his figure had taken into account present value:


 [Rangel's Counsel:] And the figures that you have come up
with for a future loss for Mr. McDonald, they are not taken
to the present value, correct?


 [Hanson:] Not in the traditional sense. I did look at what
truck drivers are now earning. They're earning $36,090 a
year, which, if we look at it had been a 2 percent per year
average growth rate for the occupation itself. During this
period of time. It looks like our safe investments--savings
program, CD's, so forth--they're running about the same,
2, 2 ½ percent. But I just--I went no further than that.


On redirect examination, Dr. Hanson further explained:

 [McDonald's Counsel]: In terms of the $33,830 that you
estimate would be--what you know after expenses Mr.
McDonald would have brought home, based upon
$168,000 some odd dollars on the 1099, you said that was
a--is that a conservative estimate?


 [Hanson:] Well, I felt it--it was, in light of not having any
tax returns.


(Emphasis added.) Although Dr. Hanson testified that his figures were "not taken
to present value," he also testified that his estimate was a conservative figure and that,
at the time of trial, the average annual salary for a truck driver was $36,090, which
would be a total of $180,450 over 5 years. Thus, the trial court could reasonably have
determined that the future-loss-of-earning-capacity damages that McDonald would
incur were greater than $165,000 and that the present-value discount was offset by
rising future costs.


C. Robinson's Future-Damages Award

 The trial court awarded Robinson $12,500 for future medical expenses. Dr.
Bernhard Meyer testified that Robinson would require physical therapy once every
year or two years in the future and that physical therapy would cost $1,500 per
treatment. In his brief on appeal, Rangel concedes that Robinson's life-expectancy
is 30 years, stating, "Thus, the $12,500 in future medical expenses awarded to
[Robinson] represents losses that will be spread out over Robinson's 30-year life
expectancy (or at least over 15 years) as argued by his counsel." Rangel, however,
implicitly argues that Robinson's medical expenses were not discounted to present
value because Robinson's attorney asked for $12,500 in future medical expenses and
the trial court awarded $12,500 in medical expenses. In fact, Robinson asked the trial
court to award $1,500 for every other year over Robinson's 30-year life expectancy,
i.e., $1,500 multiplied by 15 years, which is $22,500. However, Robinson's attorney
miscalculated that amount to be $12,500 in future medical expenses:

 Based on Dr. Meyer's testimony, that every one to two
years [Robinson] would need $1500 in physical therapy.
The future medical care, at this point in time--because
there is nothing else that can be done for him--is cutting
the 30 years in half. Your Honor, taking 15 years, if my
math is correct, that would total $12,500, which we would
suggest would be reasonable future medical, based on the
testimony of Dr. Meyer. 



 Although Robinson's attorney miscalculated the total amount of future medical
expenses in his closing argument, the trial court could have nonetheless determined
that the future-medical-expense damages that McDonald would incur were greater
than $12,500 and that the present value discount was offset by rising future costs.

D. Conclusion

 For the reasons stated above, we overrule Rangel's first point of error.

Punitive Damages


 In his second point of error, Rangel argues, "The trial court erred in awarding
$1,000,000 in punitive damages against Defendant Rangel because such an award is
excessive under state law and is grossly excessive in violation of the Due Process
Clause of the Fourteenth Amendment." Under his state-law argument, Rangel
challenges the factual sufficiency of the trial court's punitive-damages award.

A. Factual-Sufficiency Challenge

 Regarding the factual sufficiency of the evidence to support the punitive-damages award, McDonald and Robinson were required to prove by clear and
convincing evidence that the harm that they suffered resulted from fraud, malice, or
gross negligence. Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a) (Vernon Supp.
2006). In a factual-sufficiency review, we must determine whether, on the entire
record, a factfinder could reasonably have formed a firm conviction or belief that the
allegations in the petition were proven. Citizens Nat'l Bank v. Allen Rae Inv. Inc., 142
S.W.3d 459, 483 (Tex. App.--Fort Worth 2004, no pet.). No party requested
findings of fact and conclusions of law, and none was filed. Accordingly, the trial
court's judgment implies all findings necessary to support it, provided that the
necessary findings are raised by the pleadings and supported by the evidence. BMC
Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 795 (Tex. 2002); Wade v.
Comm'n for Lawyer Discipline, 961 S.W.2d 366, 374 (Tex. App.--Houston [1st
Dist.] 1997, no writ). The decision can be sustained on any reasonable theory
consistent with the evidence and the governing law. Friedman v. New Westbury
Village Assocs., 787 S.W.2d 154, 157-58 (Tex. App.--Houston [1st Dist.] 1990, no
writ). Because the record on appeal contains a full reporter's record of the trial,
Rangel may challenge the trial court's implied findings for factual sufficiency under
the same standards that govern challenges to a jury's findings. See BMC, 83 S.W.3d
at 795. Rangel must, however, demonstrate that the trial court's judgment cannot be
sustained by any theory raised by the evidence. See Friedman, 787 S.W.2d at
157-58.

 The factors set forth in Alamo National Bank v. Kraus, 616 S.W.2d 908, 910
(Tex. 1981), provide the framework for our review. See Transp. Ins. Co. v. Moriel,
879 S.W.2d 10, 31 (Tex. 1994) (holding that, when conducting factual-sufficiency
review of punitive-damage awards, court of appeals must detail relevant evidence and
explain why evidence does or does not support award in light of Kraus factors); see
also Dillard Dept. Stores, Inc. v. Silva, 148 S.W.3d 370, 373 (Tex. 2004) (indicating
that Kraus factors have value in determining reasonableness of punitive-damages
award, but are not substitute for threshold inquiry of whether punitive damages
should be awarded in first place). The Kraus factors include "(1) the nature of the
wrong, (2) the character of the conduct involved, (3) the degree of the culpability of
the wrongdoer, (4) the situation and sensibilities of the parties concerned, and (5) the
extent to which such conduct offends a public sense of justice and propriety." Kraus,
616 S.W.2d at 910. "In determining the amount of punitive damages, the trier of fact
shall consider evidence, if any, relating to:

 (1) the nature of the wrong;


 (2) the character of the conduct involved;


 (3) the degree of culpability of the wrongdoer;


 (4) the situation and sensibilities of the parties concerned;


 (5) the extent to which such conduct offends a public sense
of justice and propriety; and


 (6) the net worth of the defendant.


Tex. Civ. Prac. & Rem. Code Ann. § 41.011(a) (Vernon 1997). 


 Considering the first three factors, McDonald and Robinson introduced
undisputed evidence that Rangel drank 15 to 20 beers the day that he hit them with
his vehicle; he drove intoxicated despite having been warned by his brother that he
was too drunk to drive; he hit "something" that he realized might have been a person;
and he did not stop and render aid to McDonald and Robinson. Rangel pleaded guilty
to felony intoxication assault. Rangel wrote a court-ordered apology letter to
McDonald and Robinson as part of the terms of his punishment in his criminal case.

 Considering the fourth factor--the situation and sensibilities of the parties
concerned--McDonald and Robinson were pedestrians walking along the service
road to repair the vehicle in which they had been riding. McDonald was 63 years old
at the time of the accident. Prior to the accident, McDonald had been employed as
a truck driver and furniture mover. His job responsibilities had required him to lift
heavy objects on a daily basis. McDonald had not planned to retire until he was 72
or 73 years old. As a result of Rangel's hitting him, McDonald had a serious spinal
injury and had to learn again how to walk, to balance himself, and to use his hands. 
At the time of trial, McDonald still had not recovered fully from his injuries: he
walked with a cane, he had weakness in his legs, and he had not regained the full use
of his hands and fingers. As a result of Rangel's hitting him, Robinson had
significant weakness in both arms and a large laceration on the back of his neck. 
Robinson had major neck surgery, which realigned his spine and fused a hip bone to
the spine, along with a plate, to stabilize his neck. At the time of trial, Robinson had
not recovered fully from his injuries: he had weakness while walking and while using
his hands to lift.

 Considering the fifth factor, in light of Rangel's intoxicated state when he
inflicted serious bodily injuries on McDonald and Robinson, his failure to stop and
to render aid, and his guilty plea to intoxication assault, Rangel was highly culpable,
and the trial court could reasonably have concluded that his negligence offended a
public sense of justice and propriety.

 Considering the sixth factor, Rangel argues that his financial condition is
highly relevant to a review of the punitive-damages award and that the record reflects
that he had few, if any, assets. Evidence of a defendant's net worth is relevant in
determining the amount of punitive damages because "the amount of punitive
damages necessary to punish and deter wrongful conduct depends on the financial
strength of the defendant. 'That which could be an enormous penalty to one may be
but a mere annoyance to another.'" Moriel, 879 S.W.2d at 29 (quoting Lunsford v.
Morris, 746 S.W.2d 471, 472 (Tex. 1988), overruled on other grounds by Walker v.
Packer, 827 S.W.2d 833, 842 (Tex. 1992)). Nothing in chapter 41 of the Texas Civil
Practice and Remedies Code, Moriel, or other Texas case law indicates that evidence
of a defendant's net worth is a necessary element for a plaintiff to recover any
punitive damages. Instead, it is merely a relevant issue, as relevant to the defendant
to prove his low net worth as it is to the plaintiff to prove the defendant's high net
worth. See City of Fort Worth v. Zimlich, 975 S.W.2d 399, 411 (Tex. App.--Austin
1998), rev'd on other grounds, 29 S.W.3d 62, 72 (Tex. 2000); cf. Tex. Capital Secs.,
Inc. v. Sandefer, 58 S.W.3d 760, 774 (Tex. App.--Houston [1st Dist.] 2001, pet.
denied) (affirming award of punitive damages despite no evidence of defendant's net
worth) (opinion withdrawn in part on other grounds on rehearing).

 McDonald and Robinson were not required to introduce evidence of Rangel's
financial condition in order to recover punitive damages. See Durban v. Guajardo,
79 S.W.3d 198, 210-11 (Tex. App.--Dallas 2002, no pet.). The record does not
reflect that Rangel presented evidence of his net worth to the trial court. Rangel
contends that his testimony at trial that he was born in Mexico and was working the
night shift supports his contention that he has "few if any assets." We disagree. The
only relevant evidence that Rangel cites to support that he has "few if any assets" is
found in a post-judgment affidavit; in evaluating the sufficiency of the evidence of
the trier of fact's award of punitive damages, we cannot consider post-judgment
evidence of Rangel's indigence because that evidence was not before the trial court
at trial. Further, indigence does not diminish the offense. See White v. Sullins, 917
S.W.2d 158, 163 (Tex. App.--Beaumont 1996, writ denied). We hold that the trial
court could reasonably have concluded that the lack of evidence of Rangel's ability
to pay the judgment is outweighed by any enormity of his indifference and the
public's need to stop drunk drivers. See id.

 We hold that the trial court's award of punitive damages meets the criteria set
forth in Kraus. See Kraus, 616 S.W.2d at 910.

B. Violation-of-Due-Process-Clause Challenge

 Even if assessment of punitive damages is not deemed excessive under
governing state law, it may violate a party's substantive due process right to
protection from "grossly excessive" punitive-damages awards. See Owens-Corning
Fiberglas Corp. v. Malone, 972 S.W.2d 35, 45 (Tex. 1998) (citing BMW of N. Am.,
Inc. v. Gore, 517 U.S. 559, 568, 116 S. Ct. 1589, 1595 (1996)). Gore establishes three
"guideposts" for determining whether a punitive-damages award is unconstitutionally
excessive: (1) the degree of reprehensibility of the defendant's misconduct; (2) the
disparity between actual and punitive damages; and (3) a comparison of the punitive
damages awarded and other civil or criminal penalties that could be imposed for
similar misconduct. Malone, 972 S.W.2d at 45 (citing Gore, 517 U.S. at 574-75, 116
S. Ct. at 1598).


 Under the first guidepost, which the Supreme Court has described as the most
important, we should consider whether the harm caused was physical, as opposed to
economic; whether the tortious conduct evinced a reckless disregard of the health or
safety of others; whether the target of the conduct had financial vulnerability; whether
the conduct involved repeated actions or was an isolated incident; and whether the
harm was the result of intentional malice, trickery, deceit, or mere accident. State
Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 419, 123 S. Ct. 1513, 1521
(2003). As discussed above, Rangel's conduct demonstrated a reckless disregard of
the health and safety of McDonald and Robinson. Rangel drank 15 to 20 beers the
day that he hit McDonald and Robinson with his vehicle; he drove intoxicated despite
having been warned by his brother that he was too drunk to drive; he hit "something"
that he realized might have been a person; and he did not stop and render aid to
McDonald and Robinson. 

 As to the second guidepost, the Supreme Court noted in Campbell that there
was "a long legislative history, dating back over 700 years and going forward to
today, providing for sanctions of double, treble, or quadruple damages to deter and
punish." Campbell, 538 U.S. at 425, 123 S. Ct. at 1525. Under the trial court's
judgment, appellees received about $1,287,103 in total compensatory damages and
$1 million in total punitive damages, yielding a combined ratio of punitive to
compensatory damages of .77 to 1. The individual ratios under the judgment are .60
to 1 for McDonald and 1.09 to 1 for Robinson. See Malone, 972 S.W.2d at 47 (under
second Gore guidepost, comparing plaintiffs' individual ratios, as well as their
combined ratio, of punitive to compensatory damages). Even though the
constitutional due process line cannot be marked by a simple mathematical formula,
we conclude that the ratios between compensatory and punitive damages in this case
are well within constitutional limits. See Gore, 517 U.S. at 582, 116 S. Ct. at 1589;
Pac. Mut. Ins. Co. v. Haslip, 499 U.S. 1, 18-19, 111 S. Ct. 1032, 1043-44 (1991)
(holding that ratio of 4 to 1 did not "cross the line into constitutional impropriety");
Malone, 972 S.W.2d at 47. 

 For the third Gore guidepost, we compare the punitive damages awarded to
civil or criminal penalties imposed in comparable cases. Campbell, 538 U.S. at 428,
123 S. Ct. at 1526. However, we analyze comparable criminal penalties only in the
context of seriousness of the action and not for determining the dollar amount of the
award. Id. As to comparable penalties, Rangel pleaded guilty to intoxication assault,
which is a third-degree felony, punishable by a fine of up to $10,000 and two to 10
years in prison. See Tex. Pen. Code Ann. § 49.07 (Vernon 2003). A criminal trial
court assessed his punishment at 30 days in jail, eight years of community
supervision, 300 hours of community service, and a two-year suspension of his
driver's license. Considering the comparable criminal penalties in the context of the
seriousness of Rangel's actions and not for determining the dollar amount of the
award, we conclude that the punitive damages awarded were in line with the
seriousness of the criminal offense that Rangel committed, as shown by the criminal
penalties that the offense carried. See Campbell, 538 U.S. at 428, 123 S. Ct. at 1526.
Compare Gullo Motors I, L.P. v. Chapa, No. 04-0961, 2006 WL 3751591, at *4 (Tex.
Dec. 22, 2006) (declining to consider possibility that defendant could be found
criminally liable because plaintiff provided no proof that such sanction was ever
awarded in similar case). 

 We hold that the trial court's award of punitive damages did not violate
substantive due process.

C. Conclusion

 For the reasons stated above, we overrule Rangel's second point of error.

 Conclusion
 

 We affirm the judgment of the trial court.


 Tim Taft

 Justice


Panel consists of Justices Taft, Alcala, and Hanks.
1. McDonald and Robinson were walking to a gas station to ask for assistance
because the truck that McDonald had been driving had suffered a blow out of
a tire.
2. McDonald testified that he would have worked until he was 72 or 73 years old. 
McDonald was 63 years old at the time of the accident and 67 years old at the
time of trial. Thus, McDonald would have worked between five and six years
more after the date of trial. 
3. Dr. Hanson explained that a truck driver's reported income is higher than his
net income because drivers subtract business costs from their total income. On
average, 50 to 60 percent of drivers' income is used to pay expenses such as
the truck, gas, and maintenance. However, because McDonald also hired
people, such as for Robinson, to help him to load and to unload furniture, his
expenses could be as high as 80 percent. Accordingly, Dr. Hanson used a net-income figure for his calculations of McDonald's future-loss-of-earning-capacity damages.